(No. 13718.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ANTONIO LOPEZ *et al.* Plaintiffs in Error.

*Opinion filed February 15, 1921.*

1. CRIMINAL LAW—*when statements made in presence of accused and concerning his guilt are admissible.* Statements made by one in the presence of the accused and concerning his guilt are admissible in evidence, where the proof shows that the accused remained silent and that the circumstances were such that a person in his situation would naturally deny guilt or make explanations, and the question whether such statements amount to an implied admission of guilt is to be determined by the jury.

2. SAME—*previous or subsequent denials do not affect admissibility of statements in presence of accused.* The admissibility of evidence of statements made in the presence of the accused concerning his guilt depends upon the circumstances under which the statements are made and is not affected by his previous denials to the officers who arrested him or by his subsequent written statement or testimony on the witness stand.

3. SAME—*what is proper instruction as to presumption of innocence.* It is proper to instruct the jury that the rule as to the presumption of innocence and the burden of proving guilt beyond a reasonable doubt is not intended to aid the guilty to escape, "but is a humane provision of law intended, as far as human agency can, to prevent an innocent person from being convicted."

4. SAME—*argumentative instructions may be refused.* The purpose of instructions is to advise the jury as to the law, and it is not error to refuse to give instructions which are argumentative.

5. SAME—*whether co-defendant shall have separate trial rests in discretion of the court.* A separate trial is not to be had as a

matter of right by one indicted with others but the allowing of a separate trial rests within the discretion of the trial court, and unless that discretion is abused the decision of the trial court is not subject to review.

6. SAME—*when statements by court during taking of testimony are not improper.* A presiding judge has no right to give his opinions on controverted questions of fact, but during a controversy between counsel as to the form of a certain question during the examination of a witness the court may explain what it understood by the question asked the witness, where there is nothing in the statement of the court amounting to an opinion as to the weight of the testimony.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

JAMES J. BARBOUR, for plaintiff in error Antonio Lopez.

WILLIAM WALTER WITTY, for plaintiffs in error Joe Costanzo and Sam Ferrara.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and JAMES B. SEARCY, (EDWIN J. RABER, and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error, Antonio Lopez, Joe Costanzo and Sam Ferrara, were indicted in the criminal court of Cook county for the murder of Antonio Varchetto on the 15th of January, 1920. Louis Spinola was also indicted but never apprehended. On May 28, 1920, a jury in that court found Lopez, Costanzo and Ferrara guilty of murder, found their ages to be 26, 27 and 28 years, respectively, and fixed their punishment at death, and the cause comes here on writ of error for review.

About nine o'clock in the evening of the 15th of January, 1920, Antonio Varchetto was killed in an attempt by four men to rob a grocery and delicatessen store owned and

operated by Rosa Cimmino on Forquer street, in the city of Chicago. Plaintiff in error Lopez was captured in the store, while the other three fled. Plaintiffs in error Costanzo and Ferrara were later arrested and identified as the men who with Lopez and Spinola were in the store. The plaintiffs in error were taken to the Maxwell street station in the city of Chicago, and on the 17th of January each made a statement concerning his participation in the affair. Portions of these statements were admitted in evidence, and the chief ground for reversal urged by Lopez is that certain statements made by Costanzo were improperly admitted as evidence against him. Lopez prior to the trial filed a motion for a separate trial, which was denied.

The store at which the murder occurred is located at 709 Forquer street, in the city of Chicago. The building faces north and is divided into two rooms. The front room is the salesroom and the rear room is used as a bakery. The two rooms are connected by a door leading from one to the other. The evidence shows that this door was open on the night in question. On the east side of the front room is a counter. Behind this counter are bins and shelves set against the wall, where articles of merchandise are displayed for sale. At the south end of the counter is a bread case. The bins and shelves along the east side of the room extend south against the wall and beyond the south end of the bread case, where the shelves turn to the west, and extend from the east wall west to a point opposite the east side of the door leading into the bakery. The counter and bread case are so situated in the store room that one in the bakery looking north through the door can see customers standing before the counter or bread case, though by reason of the last mentioned shelf they may not be able to see the person behind the counter waiting on customers. In the back room there is a large heating stove, and the evidence shows that Rosa Cimmino, the proprietor, and Antoinette, her daughter, together with the deceased, Varchetto,

and his son, Ralph, were seated about the stove. Rosa and Antoinette Cimmino were sitting facing the door leading into the store and the Varchettos were sitting opposite them. About nine o'clock Costanzo, Ferrara, Lopez and Spinola entered the place. There were no other customers in the store at that time. The evidence is not clear as to which entered first. Lopez contends that he entered some time after the others had gone into the grocery store, while Antoinette Cimmino and her mother testified that Lopez came first. However that may be, it is undisputed that at the time the shooting began Lopez was standing nearest to the bakery, in front of the counter, with Costanzo north of him. Next to Costanzo was Ferrara, and then Spinola. Different ones in the party ordered certain goods. The evidence shows that Costanzo ordered cigars and later some bread, with which he found fault and called back to Mrs. Cimmino in the rear room asking her if she didn't have some fresher bread. He then inquired for sausages, and, not having the kind he desired, the daughter suggested that the butcher shop was across the street and that they might there get the sort of sausage he desired. Ferrara stepped to the door and remarked that the butcher shop across the street was closed. Costanzo then asked for olives. The evidence for the State is that the daughter wrapped up the olives for him and that Costanzo pulled out a gun and called, "Hands up!" and that immediately thereafter the other men pulled out guns and called, "Hands up!" that two shots were then fired across the counter, and the daughter crouched behind the counter and made her way toward the rear, crying, "Mama!" "Mama!" that there were ten or fifteen shots fired; that Antonio Varchetto, hearing the firing, came through the door leading to the bakery and was shot and instantly killed; that he received four bullet wounds coming from revolvers of different calibre; that Ralph Varchetto, coming from the bakery behind his father, seized Lopez, who was nearest to the bakery

door; that Lopez had a magazine gun in his right hand; that Ralph seized his right wrist with his left hand and shoved him east into the space between the shelves and the rear partition; that he twisted Lopez's right hand back and sought to secure the revolver; that Lopez fired two shots while this struggle was going on, one of which went through Ralph's overcoat, and that during this struggle Ferrara took the revolver from Lopez's hand and the other three men left the place.

The evidence shows that after Ferrara and Costanzo left the store they went to the home of Lopez, who was living at the corner of Polk and Sibley streets, about four blocks from the residence of Costanzo and Ferrara. Spinola disappeared, and had not been heard of at the time of the trial. Lopez was severely beaten by Ralph Varchetto and was held until the police were called and arrived with a wagon. At the police station he was interviewed by the superintendent of police and denied all connection with the murder. He said he had gone into the store to purchase a cigar, and that while he was there the other men attempted to hold up the place; that he didn't know who the men were. It is strongly argued by counsel for Lopez as an evidence of his innocence, that upon the arrival of the police at the store he gave the names of the men who had been in the store with him and offered to take the police officers to the place where they could be found. We are of the opinion that the evidence does not bear out this contention. While there is some testimony of the witness Antoinette Cimmino that Lopez told officer Riccio that he would take him to where the other men could be found, yet Riccio's testimony is that he did not arrive at the store until Lopez was being put into the police wagon and that he did not talk with him until he arrived at the police station; that while there Lopez denied having any connection with the murder or robbery and said that he did not know who the other men were, but that he offered to take the

officers to his (Lopez's) residence, stating that he was a
stranger in the city and did not know the number but that
he lived near Polk and Sibley streets.    It is evident that
Antoinette Cimmino was confused as to when she heard
this conversation between Lopez and officer Riccio.    The
evidence shows that she and Ralph Varchetto were taken
to the station with Lopez and that they remained there till
after midnight, when Costanzo and Ferrara were brought
in and she identified them.    The evidence does disclose that
Lopez went with the officers and found his residence, but
that nearly an hour was consumed in leading the officers
from one place to another before finally bringing them to
his residence.    During this time the evidence discloses that
there had been a rounding-up of people in that part of the
city and something like one hundred and fifty men had
been · brought in.    The evidence does not sustain the con-
tention of counsel for Lopez that he offered to take the
officers to the homes of Costanzo and Ferrara.    Lopez in
his testimony admits that while he was out with the offi-
cers that evening he did not point out the residence of
Costanzo and Ferrara, which was on Taylor and Aberdeen
streets, four blocks from where he (Lopez) resided.    The
evidence of officers Riccio and Hughes is to the effect that
when they went into Lopez's house they found Ferrara
and Costanzo and a man by the name of Theodore Cos-
tanzo, who the evidence shows is not related to Joe Cos-
tanzo; that when they entered the room occupied by these
men, Joe Costanzo was seen to shove something under the
mattress and Ferrara to drop an object onto the floor; that
officer Riccio searched Ferrara and Joe Costanzo, while
officer Hughes picked up a gun from under the bed and
another that had been shoved under the mattress.

Officer Bernacchi testified that at the Maxwell street
station, on the morning of January 17, Costanzo made a
statement to the effect that he had been in a saloon at the
corner of Desplaines and Forquer streets with the other

plaintiffs in error and Spinola; that he later that evening went into the store of Mrs. Cimmino with these men; that he saw one of them pull a gun and commence firing; that there were more than four or five shots fired, and that he ran; that when he went to the grocery store he knew the store was to be held up but that the others were going to do the job; that he went with them; that he did not know how much he was to get out of the job, but that they said there would be a couple of thousand dollars or more in it, and that he thought they were going to divide up the money; that all three of the men fired. Bernacchi also testified that upon Lopez being brought into the room Costanzo was asked by officer Bernacchi who he was, and he replied, "Tony Lopez." He was then asked if he was the Tony he had spoken of as being with him on the job, and he replied "Yes;" that Lopez made no reply to this statement; that Ferrara was also brought in, and Costanzo identified him as being the man who was with him in the saloon and went over to the grocery store with him at the time of holding up the place; that Costanzo stated in Ferrara's presence that he (Ferrara) was the first man he talked with about holding up the place, and that when Costanzo made this statement Ferrara said in Italian, "You traitor! I didn't think you were that kind of a man!" Bernacchi also testified that in the presence of Lopez, Costanzo identified a Colt magazine gun as belonging to Lopez, stating that he was there, and that Lopez made no reply but grinned and sat down. These statements, it is earnestly urged, were incompetent as against Lopez.

Lopez also made a statement, in which he denied having anything to do with the matter, and said that he had been at the saloon at Desplaines and Forquer streets with the other plaintiffs in error; that he had been at Costanzo's house during that day, but that the others left the saloon before he did and he started home, and seeing the others in the grocery, stopped to buy a cigar; that he didn't know any-

thing about the intent on the part of his companions to rob this store.

Ferrara also made a statement, in which he stated that he and Lopez, Costanzo, Costanzo's wife and his (Ferrara's) girl had supper at the Costanzo house on that evening; that the men went to the saloon at Desplaines and Forquer streets; that he didn't hear anyone talking about holding up the store across the street; that he had no gun and had nothing to do with the attempted robbery or murder. Practically the same statements were made before the officers on the evening of the same day and were reduced to writing and signed by plaintiffs in error making the same.

Costanzo upon the stand testified that he and Ferrara stopped in the saloon at the corner of Desplaines and Forquer streets on the evening of the homicide; that Lopez and Spinola came in; that Spinola bought drinks for the four; that after they had been there fifteen or twenty minutes he and Ferrara went out; that when they passed the bakery shop he went in, because his wife had told him to bring home a fresh loaf of bread and something to eat; that he asked the girl for bread and if she had some good sausage; that she told him she didn't have sausage but that she had some olives; that he bought a box of olives, and while he was paying for the bread and olives Lopez and Spinola came in; that he offered them a cigar and they each took a cigar; that while he was picking up his change the soldier (meaning Spinola) pulled out a gun and said, "Hands up!" that after that he heard shots fired in every direction, and that he ran, leaving what he had purchased and his change on the counter, and that Ferrara ran after him; that Ferrara told him he had taken a gun away from Tony,—meaning Lopez; that he didn't have a gun, and had nothing to do with the robbery. When asked whether or not he knew the place was going to be robbed that night, he replied: "No, I am not sure; I could not swear to it; I took an oath I swear to tell the truth." In answer to

questions as to his statement made to the police, he stated as to most of the answers that he did not remember, or that if he made the answers shown in the statement he didn't have his right senses. He stated, however, in answer to questions put by the State's attorney, that he told the police officer that Ferrara had told him that the Cimminos had a couple of thousand dollars or more in the store, but said, "Ferrara never told me anything like that; they made me make that answer." He also testified that he had made certain statements as to the parties having guns, but that he didn't know whether they had or not.

Ferrara's testimony on the witness stand was, in the main, corroborative of that of Costanzo, he testifying that he had taken the gun from Lopez's hand after the shooting in the store. Lopez on the stand corroborated the testimony of Ferrara and Costanzo that he was with them during that day; that he had gone out with Ferrara in the afternoon to help him look for a stove and that they had supper together that night at Costanzo's. He testified that he had been in Chicago but a short time; that his home was in West Virginia; that he had come to Chicago to the home of Rosino de Mario, because she was his godmother; that he later found a boarding house, where he lived at the time of his arrest; that he was out of work,— looking for employment; that he didn't know the numbers or names of the streets in that locality; that when he went out that night he met Ferrara, Costanzo and Spinola; that they invited him to go over to a saloon at Desplaines and Forquer streets and have a glass of wine; that he never was in the place before; that they remained there about half an hour and played games; that finally they went out and he was left in the saloon; that after they went out he talked with a lame fellow (who the evidence shows was Theodore Costanzo) for about fifteen minutes; that he then left, saying he was going home; that he went past the grocery store and saw Ferrara, Costanzo and Spi-

nola in the place and went in, because he wanted to buy a cigar; that while getting the cigar he heard someone say, "Hands up!" that the girl started screaming and he heard two shots; that he was afraid and put up his arms and threw them over the counter; that he heard four more shots, and that he remained in that position until a man grabbed him by the neck; that he told him he didn't do anything; that the man hit him and threw him on the floor; that the man called the police and had him arrested; that he never had a gun in his life; that he had nothing to do with the robbery and knew nothing of the purpose to rob.

It is earnestly contended by counsel for plaintiff in error Lopez that the court erred in admitting in evidence that portion of the statement of Costanzo in which he said, in the presence of Lopez, that he (Lopez) had a gun. It is here objected that the statement was incompetent as to Lopez, for the reason that it was a statement of another concerning the guilt of the accused, which should not be binding as to him. The rule in relation to admissibility of statements by another made in the presence of the accused is, that if the circumstances are such that a person so situated would naturally deny guilt or make explanations the evidence is admissible, and the question whether it amounts to an implied admission of guilt is to be determined by the jury. Such evidence is admitted not because someone else made the statement, but because, taking all the circumstances into account, the jury may reasonably conclude that the accused has expressly or impliedly ratified the statement as his own or impliedly admitted its truth, and unless that is so the evidence should not be admitted. *Ackerson* v. *People*, 124 Ill. 563; *People* v. *Tielke*, 259 id. 88.

The statement of Costanzo objected to was first made orally before the police officers on the morning of January 17, and later that day it was repeated and reduced to writing before the assistant State's attorney. Lopez was brought in, and the witness Bernacchi testifies that he said

to Lopez during Costanzo's statement, "You said you didn't have a gun," and then to Costanzo, "Did Lopez have a gun?" and Costanzo said, "Yes." This question and answer were objected to and a motion was made by counsel for Lopez to strike it from the record. The court asked, "What did Lopez say?" The answer was, "Lopez didn't say anything." The court then ruled that the motion to strike should be denied. The question was then asked the witness if anything else was said in that conversation with reference to Lopez. The witness replied that he asked Costanzo if Lopez had a gun, and that Costanzo said "Yes." This was again objected to by counsel for Lopez, and upon being asked if the same ground for objection was urged, counsel for Lopez replied that it was, and the court overruled the objection. The witness then stated that Costanzo said in the presence of Lopez, "He is the one that done the shooting." The question was then asked, "What did Lopez say in response to that?" and the witness answered, "He just grinned and sat down; I told him to sit down; as near as I can remember that was all that took place at that time." Bernacchi also testified that in the evening of the same day he had another conversation with plaintiffs in error, at which time the statements were taken down by the assistant State's attorney; that at that time Costanzo was asked, in the presence of Lopez, if he (Lopez) had a gun, and Costanzo said that he had. A motion was made to strike this answer. The question was then asked, "What did Lopez do or say when he made this statement?" and the reply was that he stood there and grinned. When objection was made by counsel for Lopez the court asked, "As I understand, Lopez was standing there at the time?" Upon receiving an affirmative reply the court thereupon overruled the objection. This witness also testified that Costanzo at that time was shown a Colt magazine gun, and that Costanzo said, "That is the gun that Lopez had in his hand." Objection was made and motion made to

strike. Thereupon the court asked, "Was Lopez standing there at the time?" Receiving an affirmative reply he asked, "What did Lopez say?" and the witness answered, "He just grinned and didn't say anything." Thereupon the court overruled the motion and ordered that the answer stand. This witness also testified that at that time, in the presence of Lopez, Costanzo was asked if Lopez did any shooting. Objection was made and overruled, and he replied that Lopez did shoot; that they all shot. Motion was made by counsel for Lopez to strike this evidence, which was denied. The evidence shows the witness stated that Lopez said nothing in response to that statement.

We are of the opinion that the trial court did not err in admitting these statements. While the evidence shows that in his statement previously made to the officers Lopez had denied having a gun, and that he made the same denial afterward in his written statement and on the witness stand, yet the basis of the admissibility of evidence of this character is made up from the surrounding circumstances. Where one is faced by another who makes statements concerning his guilt, under circumstances that would naturally cause him to seek to deny or explain if they were untrue, the statements are admissible. While it is true, as contended by counsel, that Lopez was badly beaten by Ralph Varchetto, yet we are not impressed with the argument that for that reason he was not in a physical condition to enter a denial, as he had made statements previously to the officers, and appears from the testimony to have had his mental faculties about him. Here the circumstances were such, as we view them, that the jury might reasonably say that Lopez, had the charges been untrue with reference to his having had a gun and shooting on that occasion, would naturally have denied them. This record shows that the trial judge used care in endeavoring to avoid error, and we are of the opinion that it was not error to permit those statements to go to the jury for what they were worth.

296—29

Moreover, there is much positive testimony in the record that Lopez did have a gun and that he did shoot, as did the others on that occasion. The positive testimony of Ralph Varchetto concerning his struggle to secure the magazine gun in the hands of Lopez, in which he was corroborated by the Cimminos, tends strongly to establish that Lopez had a gun, and while this proof does not, of itself, establish the admissibility of the statement of Costanzo in the presence of Lopez, it does tend to show that Lopez knew that Costanzo was telling the truth when he said that Lopez had a gun, and it was a proper matter to be considered by the court in determining whether or not the jury might reasonably say, under all the surrounding circumstances, that Lopez impliedly admitted the truth of Costanzo's statement.

We are convinced that the testimony shows that these men had previously met in the saloon at the corner of Desplaines and Forquer streets and there conspired to rob this store, and that their going into the store and ordering the goods was in furtherance of that attempt. While Lopez contends that he did not leave the saloon until fifteen minutes after the others had left, and that then he started home, there is much in the testimony to refute his statement. In the first place, the other men agree that they went directly from the saloon to the grocery store, which was about two hundred feet from the saloon. While the testimony does not agree as to whether or not Lopez came into the store with them, it is evident that he must have come in shortly afterward. He could scarcely have been in the saloon fifteen minutes after the others left, as the whole transaction was over within less time. Moreover, Lopez lived in a direction opposite that in which this store is located, and it is hardly to be believed that if he was on his way home he would have gone by the store. The evidence shows, beyond all reasonable doubt, that all of these men participated in this atrocious crime, and the jury were justified in so finding.

Plaintiffs in error also complain of the eighth instruction given on the part of the People. That instruction is as follows:

"The jury are instructed that the rule that clothes the accused with the presumption of innocence and imposes upon the State the burden of establishing his guilt beyond a reasonable doubt, is not intended to aid anyone who is in fact guilty, to escape, but is a humane provision of law intended as far as human agency can, to prevent an innocent person from being convicted."

It is urged that this instruction was a direct invitation to the jury to go outside of the evidence and to disregard the presumption of innocence and the burden of proof. We are unable to see the force of this contention. The jury were instructed as to the legal presumptions involved and that all matters of fact constituting the charge against the defendants must be proven beyond all reasonable doubt, and we are unable to see how they could have been misled into believing that such facts might be arrived at in any other manner. The same instruction was given in *Spies* v. *People,* 122 Ill. 1, and was there approved.

Plaintiffs in error complain of the refusal of the court to give to the jury instruction No. 32 offered by them. That instruction is as follows:

"The court instructs the jury that evidence of verbal statements, made by the defendants outside of court should be received by the jury with great caution; and in determining the weight to which such evidence is entitled, the jury should take into consideration the fact that such testimony consists in the repetition of oral statements; that the persons making such statements may themselves have been misinformed; that they may not have expressed their own meaning, or may have been misunderstood by the witnesses. And the jury should also consider the lapse of time, if any, and the ability of the defendants to express themselves clearly in the language employed, and from all

these circumstances, determining to what weight, if any, such evidence is entitled."

While this instruction contained some principles of law applicable to the case, yet a reading of it will disclose that it is argumentative and such as plaintiffs in error were not entitled to have given. The purpose of instructions is to advise the jury as to the law, and argumentative instructions are not approved. *Chicago Union Traction Co.* v. *O'Brien,* 219 Ill. 303; *Ludwig* v. *Sager,* 84 id. 99.

Plaintiffs in error Costanzo and Ferrara also contend that the court erred in refusing to give the fifth instruction offered by them. That instruction is as follows:

"The court instructs the jury that even should the jury believe from the evidence, that the offense charged in the indictment was committed, in the manner and form alleged therein, yet the jury are not bound to believe that the offense was committed by defendants solely because a witness or witnesses may have testified that they are the same persons, but the jury have a right, for the purpose of determining the likelihood of mistake on the part of such witness or witnesses, to take into consideration all the surrounding circumstances appearing from the evidence at the time of the alleged crime."

This instruction is purely argumentative. Moreover, it finds no basis in the evidence concerning the presence of plaintiffs in error, as they do not deny they were at the scene of the homicide. The instruction is misleading as to the duties of the jury, and the court properly refused it.

It is also contended that the court erred in denying a separate trial to Lopez. The matter of allowing a separate trial lies within the discretion of the trial court, and unless that discretion is abused the decision of that court is not subject to review. A separate trial is not to be had by one indicted with others, as a matter of right. An application for such is addressed to the sound discretion of the court. (*People* v. *Covitz,* 262 Ill. 514.) It is evident from

a review of the record that there was no evidence offered
or received on the trial affecting Lopez which would not
have been admissible against him had he been tried alone.
The only evidence seriously contended by counsel for Lopez
not to have been admissible against him is the statements
of Costanzo, which have been considered in this opinion
and which we are of the opinion were properly admitted in
evidence. The court did not err in denying a separate trial.

Counsel also contend that the court erred in its com-
ments upon the evidence. It is complained that during the
testimony of Ralph Varchetto he was asked by counsel for
the State to take the pointer and show on the plat intro-
duced in evidence where he was and where it was that the
four men came toward him, which the witness did. The
question was then asked, "Now point out to us just where
you were and where the men were standing." This was
objected to as leading and suggestive, and the court said,
"No, he is directing the attention of the witness to the
diagram on this chart and also the point where he turned
around." Counsel said, "I am directing the attention of
the witness, if the court please, to where the men were
standing," and the court replied, "That is perfectly correct
in that question; he is directing the attention of the wit-
ness to the particular time of this occurrence." It is ob-
jected that this was an indication that the court believed
the testimony of Varchetto, and that he believed that it was
proven by the witness that he was at a certain point in the
rear of the room when he turned around and that the four
defendants were heading toward the bakery door. We are
unable to see the force of this contention. The statement
of the court, as we understand it, was simply an explana-
tion of what the court understood to be the question asked
of the witness. We see nothing in it which tends to indi-
cate that the court considered the testimony of the witness
entitled to any more weight than that of any other witness
or that he considered any fact proven.

It is complained, also, that the court erred in its remarks during the cross-examination of Ferrara. The State's attorney, in examining Ferrara as to his statement that he and Costanzo had left the grocery store together after the murder, asked him, "Why didn't you ask him what kind of a fellow this man Louis [referring to Spinola] was, to go in there and hold up a place and shoot when you were present?" Counsel for Lopez objected on the ground that this alleged conversation as to why he didn't hold a conversation with somebody else was incompetent, and the court replied, "As I understand it, he was with Joe Costanzo on the street after they went out of the store, and he has a right to ask him." We see nothing improper in this remark. The expression "as I understand it," must have referred to the testimony of Ferrara, who had stated that he was on the street with Costanzo. It is well established in this State that a presiding judge has no right to give his opinion on controverted questions of fact, but we are unable to see wherein statements made by the court in this case could have in anywise influenced the jury on controverted questions of fact.

The defendants in this case were proven guilty, beyond all reasonable doubt, of an atrocious murder perpetrated in the furtherance of an attempted robbery. The jury were amply justified in finding them guilty and in inflicting the maximum penalty. We find no reversible error in the record.

The judgment of the criminal court of Cook county will therefore be affirmed, and the clerk of this court is directed to enter an order fixing the period between nine o'clock A. M. and five o'clock P. M. on the fifteenth day of April, 1921, as the time when the original sentence of death entered in the criminal court shall be executed. A certified copy of that order will be furnished by the clerk of this court to the sheriff of Cook county.

*Judgment affirmed.*