(No. 14373.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY ANDRAE, Plaintiff in Error.

*Opinion filed December 19, 1922.*

1. CRIMINAL LAW—*existence of corporation may be proved by parol evidence.* In a prosecution for burglary, the corporate existence of the owner of the property may be proved, *prima facie,* by the testimony of the secretary of the company as to the charter, organization, business and officers of the company where no evidence is offered in rebuttal; but a statement by a witness that the company was a corporation on a certain date is a mere conclusion and not admissible.

2. SAME—*statement of accomplice, if otherwise admissible, is not incompetent because of promise of immunity.* While a statement made by a defendant under a promise of immunity is not admissible against him, the statement of an accomplice, in the presence of the defendant, implicating him with the crime, if otherwise admissible, is not rendered incompetent because it was made under a promise of immunity, but such fact may be considered by the jury as affecting the credibility of the testimony of the accomplice.

3. SAME—*when statement in presence of accused is admissible against him.* A statement made in the presence of the accused implicating him with the crime with which he is charged is admissible against him, where the circumstances are such that a person so situated would naturally deny the statement or make explanation and the defendant fails to do either, as the defendant in such case is regarded as having adopted the statement as his own; and the question whether the statement is true or false is a question of fact for the jury.

4. SAME—*when defendant's reply to statement made in his presence is not a denial or explanation.* Where a confessed accomplice makes a detailed statement in the presence of the accused implicating him with the crime, and the defendant, when asked what he has to say, replies, "I can't say nothing," or "What can I say?" the answer does not amount to a denial of guilt or to an explanation, and whether or not such answer amounts to an implied admission is a question of fact for the jury.

5. SAME—*what objects may be taken from bar by jury.* The jury may take with them only those objects which are directly connected with the subject of investigation, and it rests in the discretion of the trial judge whether objects offered in evidence may be carried from the bar by the jury.

6. SAME—*when burglar's tools are admissible in evidence.* In a prosecution for burglary it is proper to admit in evidence not only the burglar's equipment found at the scene of the crime but also other similar tools found hidden at the home of a confessed accomplice, who, in a statement implicating the defendant in his presence, described practically all of the equipment.

7. SAME—*acquittal of murder does not bar a prosecution for burglary—estoppel by verdict.* The fact that the defendant in a prosecution for burglary has been acquitted of the crime of murder, which was committed when the burglary was perpetrated, does not bar a prosecution for burglary, and where there is no finding of any ultimate fact in the murder trial other than the verdict of not guilty there is no estoppel by verdict.

8. SAME—*grounds for reversal cannot be first raised on rehearing.* Grounds for reversal based upon the alleged insufficiency of the verdict and the alleged invalidity of the statute under which the defendant was sentenced cannot be raised for the first time on petition for rehearing in the Supreme Court.

9. SAME—*when opinion in a former prosecution should not be read to jury.* During the argument in a criminal case counsel may read Supreme Court decisions discussing rules of law applicable to the case, together with such facts as are necessary to an understanding of the law, but in a burglary trial the court may refuse to allow counsel to read an opinion reversing a former conviction of the defendant of murder committed during the burglary, where no question was discussed in the opinion which would have been helpful to the jury in the burglary trial.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN J. SULLIVAN, Judge, presiding.

EUGENE L. McGARRY, (THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and FLOYD E. BRITTON, (EDWARD E. WILSON, and WILLIAM SCOTT STEWART, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Shortly after midnight of February 6, 1920, four men entered the factory of the Western Shade Cloth Company, seized and bound the inside watchman, the engineer

and fireman, and later shot and killed the outside watchman, who refused to throw up his hands upon demand. Plaintiff in error and others were indicted for this murder. A verdict of guilty was returned and the judgment entered on that verdict was reversed by this court in *People* v. *Andrae,* 295 Ill. 445. The cause was remanded and on a re-trial plaintiff in error was found not guilty of murder. He was afterwards indicted and convicted for burglary. This writ of error was prosecuted to review the judgment in the burglary case, and it is that judgment which is now before us for review.

For a more complete statement of the facts we refer to our former opinion in the murder case, and it will be unnecessary to re-state them here in detail.

One of the contentions made by plaintiff in error is that the People failed to prove the corporate existence of the Western Shade Cloth Company. The secretary of the company testified that he had been connected with it for sixteen years; that the business of the company was managed by a board of five directors, naming them; that it had a president and a vice-president, stating their names; that it had a charter issued by the State of Illinois; that it had been doing business under its charter in the city of Chicago during the sixteen years of his connection with it; that he had seen the charter, which he thought was out of the State and for that reason was not available as evidence; and that as secretary of the company he had attended meetings of the board of directors of said company. There was no proof to the contrary, and under the statute authorizing proof of the legal existence of a corporation by user the foregoing evidence sufficiently supported the allegation of the indictment. (*Graff* v. *People,* 208 Ill. 312; *People* v. *Fitzgerald,* 297 id. 264.) A witness was erroneously permitted by the court, over the objection of plaintiff in error, to answer directly that the company was a corporation on February 7, 1920. This was a mere conclusion of the wit-

ness, but the error was harmless, as the other proof established that the company was *prima facie* a corporation.

Guy Wadsworth, an accomplice in this crime and a self-confessed thief and burglar, testified at the former trial of plaintiff in error for murder but was not called as a witness at this trial. Two police officers and a stenographer testified to a statement made by Wadsworth in the presence of plaintiff in error in the State's attorney's office, in which Wadsworth recited in detail the occurrences of the night of the burglary, and said, in substance, that plaintiff in error was one of the four men who entered the building with him and that he was the man who shot and killed the watchman. Plaintiff in error heard Wadsworth's entire story, which is set out in detail in our former opinion. At the conclusion of it the assistant State's attorney, Lowery, who was conducting the examination, said to plaintiff in error, "What have you got to say, Andrae?" and plaintiff in error replied, "I can't say nothing, Mr. Lowery," or, "What can I say, Mr. Lowery?" It is contended that as Wadsworth's story was the result of a promise of immunity it was not admissible as evidence against Andrae. Wadsworth's statement under a promise of immunity would not have been admissible against himself if he were being prosecuted for this crime, but the fact that he had been promised immunity would not affect the competency of his statement as a witness for the People against Andrae, if the statement is otherwise admissible. The fact that Wadsworth had been promised immunity could only be considered by the jury as affecting the credibility of his evidence, and not as to its admissibility against Andrae. The rule in relation to the admissibility of statements by another, made in the presence of the accused, is, that if the circumstances are such that a person so situated would naturally deny it or make explanation and fails to do either, the evidence is admissible. (*People* v. *Lopez,* 296 Ill. 438.) Neither of the above answers of Andrae to the State's at-

torney amounted to a denial of his guilt or to an explanation on his part or modification of the damaging facts related by Wadsworth. Whether or not what he then said and his failure to deny guilt or make explanation to the State's attorney amounted to an implied admission of guilt is a question of fact to be determined by the jury. There is no showing in the record that Andrae was taken by surprise or had not sufficient time to consider what answer he should make. The statement of Wadsworth was quite lengthy and must have occupied at least a half hour of his time in making it. There is no contention that Andrae was not given full opportunity to answer or that he was not advised of his rights and did not know what reply to make. His only excuse or explanation is that they were not his entire answers and that he told the State's attorney that Wadsworth's statement was a lie. Whether or not Wadsworth's statement was true or false was a question of fact for the jury. Said statement was admissible on the theory that plaintiff in error having heard it and having had due time to consider it, and having failed to repudiate it, adopted it as his statement. (*People* v. *Cardinelli*, 297 Ill. 116; *People* v. *Paisley*, 299 id. 576.) Whether the conduct and statement of plaintiff in error, taking into consideration all the surrounding circumstances, amounted to a confession of guilt was a question of fact for the jury.

The court received in evidence a bag full of revolvers, burglar's tools and explosives, a part of these articles having been found at the scene of the crime but most of them having been found hidden at Wadsworth's home, and it is contended that the court's action in this regard was error. It is manifest from the evidence in the record that the two revolvers introduced in evidence were shown to have been in the possession of Andrae and one of his associates at the time the crime here in question was committed. In a criminal case the jury may take with them only those objects which are directly connected with the subject of judi-

cial investigation, and it rests in the discretion of the trial court whether these objects may be carried from the bar by the jury. (*People* v. *Clark,* 301 Ill. 428.) In his statement in the presence of Andrae, Wadsworth described practically all of the burglar's equipment that was received in evidence, and in that way the exhibits were connected with the crime charged. Under the holdings of this court, in our judgment it was proper to receive in evidence the burglar's equipment found at the scene of the crime, and we are not able to see how plaintiff in error was prejudiced by the admission of the other articles in evidence.

The evidence introduced by the People reveals the fact that a murder was committed in the commission of the burglary charged in the indictment. The two crimes were so closely connected in their facts that it is not possible for the People to be confined to the proof merely of the burglary without also allowing proof of the killing and give the People the benefit of all the evidence bearing upon the question of Andrae's guilt as to the burglary. It is true the prosecution is for burglary alone in this proceeding, and as already stated, Andrae has been found not guilty as to the charge of murder upon practically the same state of facts as contained in this record. Without question the persons who committed this burglary committed the murder, and every person guilty of the burglary is guilty of murder. It does not follow, however, that an acquittal of the charge of murder is a bar to a prosecution for other crimes that were committed at the same time by the same parties and in the same transaction. When plaintiff in error was tried upon the indictment charging him with murder he could not have been convicted of burglary, and it follows that an acquittal or conviction of murder is no bar to a prosecution for burglary. (*Nagel* v. *People,* 229 Ill. 598; *People* v. *Stephens,* 297 id. 91; *People* v. *Niles,* 300 id. 458.) It is not claimed by the plaintiff in error that there was a specific finding in this case of an ultimate fact in the trial for

murder that would amount to an estoppel by verdict in this case. All that is shown in this case by the evidence is that there was a verdict of not guilty in the murder case. The doctrine of *res judicata* cannot apply at all to this case, and there is no claim by plaintiff in error that it does. This court will not assume, in the absence of such showing, that the jury made a finding of any ultimate fact, and there is no basis in the record for the claim of an estoppel by verdict against the People.

The argument of plaintiff in error that the motion in arrest of judgment in this case should have been allowed, since the jury did not fix the term of imprisonment in their verdict, and that the trial court erred in imposing an indeterminate sentence because the Indeterminate Sentence law, as construed by this court, violates section 1 of the fourteenth amendment of the constitution of the United States, will not be considered by this court. Said grounds for reversal were presented by plaintiff in error for the first time on the petition for rehearing, and under the holdings of this court such errors, if they existed, were waived because not presented in time.

The evidence produced by the People and by the plaintiff in error, as has been stated, reveals that a murder was committed in the commission of the burglary charged in the indictment. In his argument to the jury the assistant State's attorney referred to the plaintiff in error as a burglar and a murderer and appealed to the jury to avenge the death of the watchman by convicting plaintiff in error of burglary. Without doubt this argument was improper and should not have been made, but we cannot see, in view of the facts that were properly admissible on the trial of burglary, how this argument materially affected the interests of plaintiff in error. The jury knew that a murder was committed, and if they believed from the evidence in the case that the plaintiff in error took part in the burglary they no doubt believed that he was guilty of murder.

Counsel for the plaintiff in error contend that the court erred in denying them the right to read to the jury, in their argument, the opinion in *People* v. *Andrae, supra,* decided by this court in the murder case. The jury are judges of the law as well as the facts in a criminal case, and it is proper for counsel to read to the jury from the published reports of the decisions of this court discussing the law applicable to the case on trial, but it is not proper to read to the jury from the statement of facts in another case except when and so far as the facts are necessary to an understanding of the discussion of law. In our judgment there was no question discussed in the opinion sought to be read which would have been helpful to the jury in reaching a proper conclusion in this case, and the court properly refused to permit the opinion to be read in evidence. *People* v. *Paisley, supra.*

Plaintiff in error testified in his own behalf and denied the burglary, stating that he was at home in bed at the time. One of his sisters testified that she returned from a dance shortly before one o'clock on the night in question and that she looked into the bed-room usually occupied by plaintiff in error and saw him asleep in bed. Another sister and a young man who came home with her from the dance testified that they saw the sister look into the bed-room and corroborated her testimony with respect to the hour and date. The authorities did not learn for more than a month after this that plaintiff in error was connected with the crime, and he was not arrested until March 10, 1920. Several of the witnesses described the burglar who shot the watchman as a young man about five feet six inches tall and wearing a dark-colored army overcoat. They also testified that plaintiff in error was of similar size and build, and that an army overcoat which he had had dyed and which was offered in evidence was similar to the overcoat worn by the burglar. John Ritas, the inside watchman, testified that he saw the

plaintiff in error in the State's attorney's office shortly after his arrest and heard him talk there, and that in his opinion he was one of the men who entered the building of the Western Shade Cloth Company in the early morning of February 7, 1920; that the burglar had a handkerchief over his face and witness could not see his face below the eyes, but that he could identify plaintiff in error by his talk and size and by the overcoat admitted to belong to him. It is evident from the record that Ritas speaks broken English, and it is difficult to tell just what he means by some of his statements. Whether he was able to identify the plaintiff in error from the opportunity he had and whether he did identify him with sufficient certainty were questions for the jury. The jury saw and heard all of the witnesses and had all the facts and circumstances before them surrounding the commission of the crime and the taking of Wadsworth's statement. The weight to be given to the testimony and the credit to be given to the various witnesses are matters committed to the jury. This court has no right to substitute its opinion for that of the jury when the jury have honestly and according to their best light performed their duty, unless we are satisfied, from a consideration of all the testimony, that there is a reasonable doubt of the guilt of the accused. (*People* v. *Cunningham,* 300 Ill. 376; *People* v. *Scott,* 261 id. 165; *People* v. *Deluce,* 237 id. 541.) The jury had the witnesses before them and could judge of their credibility and manner of testifying far better than this court from merely reading the record, and we are not prepared to say that there is a reasonable doubt of plaintiff in error's guilt as shown by the record.

The judgment of the criminal court will be affirmed.

*Judgment affirmed.*