THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MAURICE PENDLETON, Defendant-Appellant.

First District (6th Division)   No. 1—90—1606

Opinion filed November 29, 1993.

Kathleen T. Zellner & Associates, of Naperville (Kathleen T. Zellner and Michael D. Hemstreet, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Eileen O'Neill, and Michael B. McHale, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

This is the third appeal from a conviction for a murder committed

on March 31, 1970. In August 1970, the defendant was indicted for the murders of Dewey Crockett and Debra Goodlow. A jury acquitted him of the murder of Crockett and convicted him of the murder of Goodlow. He was sentenced to 100 to 199 years' imprisonment. The appellate court reversed the conviction because of the State's repeated reference to Goodlow's pregnancy and the improper introduction of a hypodermic needle and statements made by the defendant. (*People v. Pendleton* (1974), 24 Ill. App. 3d 385, 321 N.E.2d 433 (*Pendleton I*).) His second trial resulted in a mistrial. His third trial was conducted in December 1975; he was again convicted by a jury and again sentenced to 100 to 199 years' imprisonment. The appellate court reversed his conviction because of a conflict of interest on the part of the defendant's attorney and the introduction of certain details concerning the killing of Crockett. (*People v. Pendleton* (1977), 52 Ill. App. 3d 241, 367 N.E.2d 196 (*Pendleton II*).) In 1979 he was again convicted by a jury and again sentenced to 100 to 199 years' imprisonment. This appeal is from that conviction.[1]

The defendant contends that the State again improperly referred to the killing of Dewey Crockett, contrary to the directions of the appellate court in *Pendleton II*. The defendant also contends that reversible error occurred when the judge restricted the defendant's questioning of two witnesses. The defendant does not question the sufficiency of the evidence to establish his guilt beyond a reasonable doubt.

Priscilla Gilchrist, a desk clerk at the Madison Park Hotel in Chicago, testified that on March 31, 1970, at 3 a.m. Dewey Crockett, whom Gilchrist had seen in the hotel before, and another man she identified as the defendant asked to see Debra Goodlow. Gilchrist called Goodlow's room, and Goodlow gave permission for the men to go up to her room. They did so.

Bonnie Sibbert, a resident of the hotel who also worked there as a desk clerk, came in and began talking with Gilchrist. Shortly thereafter, Debra Goodlow came downstairs screaming; she said that someone had been shot in her apartment. She ran outside after asking Gilchrist and Sibbert for help. The man who had accompanied Crockett into the hotel went out the side exit from which Goodlow had left. Both Sibbert and Gilchrist identified the defendant as the man who left after Goodlow. Gilchrist had seen Crockett before. Sibbert had seen the defendant on previous occasions when he came to visit Goodlow. Each time she saw him he was with Crockett.

---

[1]We granted the defendant's motion to file a late notice of appeal in 1990.

Valley Morrison, a college teacher, was in his apartment about one half block from the Madison Park Hotel. He heard a woman screaming for help. He went to the window and saw a woman, later identified as Debra Goodlow, running west with a man chasing after her. When the man got closer to the woman, she turned and raised her arm. The man fired at the woman, striking her in the upper body. She fell to her knees, and the man then shot her in the head at point-blank range. Morrison yelled for the man to stop. The man looked at Morrison and then fled down the street. The man was wearing a knee-length coat.

The State's brief recites that Morrison "saw defendant wearing a knee-length coat and chasing [Goodlow]." That is not an accurate recitation of Morrison's testimony. Morrison testified that he picked out a picture of the defendant as someone who resembled the person who shot Goodlow. He identified the defendant in court as the person whose picture he had picked out.

The defendant was arrested in Corpus Christi, Texas, in July 1970, and was returned to Illinois in August.

■ The defendant contends that the State committed reversible error by referring to the death of Dewey Crockett. The defendant insists that the State disregarded the directions the appellate court made when it reversed the second conviction in *Pendleton II*.

Because the holding of the appellate court in reversing the second conviction is not clear to us, it is necessary to discuss it at length. In *Pendleton II*, the testimony of Gilchrist, Sibbert and Morrison was substantially the same as their testimony in *Pendleton I* and in this case. Dewey Crockett's father also testified in *Pendleton I* and *Pendleton II* as well as in this case. In all three cases, he testified that the defendant and his son Dewey were friends; that he had seen the defendant several times in his home and that the defendant owned a three-quarter-length, dark man-made fur coat. Sibbert testified that the defendant was wearing a knee-length, man-made fur coat. Gilchrist said the defendant was wearing a three-quarter-length, dark fur coat. As is apparent, Crockett's testimony corroborated the testimony of the identifying witnesses. See *Pendleton I*, 24 Ill. App. 3d at 388.

In *Pendleton II*, the jury was given the "additional information that when [Crockett's] father was called to the scene, he gave defendant's name to the police; whereupon, they included defendant's picture in the photographic spread shown to the witnesses." (*Pendleton II*, 52 Ill. App. 3d at 249.) The prosecutor gave the jury that information in closing argument; it did not come from any testimony. In addition, the evidence established that Dewey Crockett died on the

same day as Debra Goodlow. The appellate court held that the State was entitled to show that Dewey Crockett was dead, thus explaining his absence as a witness, but that it was unnecessary to give the exact date of his death. The appellate court added:

"Moreover, we think that any question in the jurors' minds which would have operated in favor of defendant's presumption of innocence [in the death of Dewey Crockett] was unfavorably affected by the prosecutor's argument informing them that Dewey's father was called to the scene of his son's murder and that he gave defendant's name to the police to assist them in identifying his son's murderer." *Pendleton II*, 52 Ill. App. 3d at 250.

The appellate court recognized the exceptions to the general rule barring evidence of other crimes but cautioned:

"Where, however, in the commission of the other crime, it is some (but less than all) of the accused's behavior which is probative rather than the actual commission of the crime itself, the testimony must be tailored so that the jury is apprised only of the behavior and not the commission of a crime. [Citations.]" (*Pendleton II*, 52 Ill. App. 3d at 249.)

At the same time the appellate court said this:

"*It cannot be gainsaid that Dewey's murder itself was probative of motive, intent, identity, absence of mistake, or modus operandi relevant to Debra's murder.* Therefore, as much of defendant's behavior as tended to make any fact at issue more or less probable was admissible [citation], but only to the extent that the factual pattern revealed did not directly or indirectly show the actual commission of another crime [citations]. This principle ought to be strictly applied in cases where, as here, the accused was acquitted of the other crime." (Emphasis added.) *Pendleton II*, 52 Ill. App. 3d at 249.

The precise holding of the appellate court is not clear and there is an apparent inconsistency in the opinion. The cases cited by the appellate court are not factually in point. We read the opinion to say on one hand that proof of the murder was proper as an exception to the rule and on the other hand it was not admissible.

We are not convinced that the jury could not have been informed that Dewey Crockett had been killed in the apartment. (See *People v. Andrae* (1922), 305 Ill. 530, 137 N.E. 496; *Dowling v. United States* (1990), 493 U.S. 342, 107 L. Ed. 2d 708, 110 S. Ct. 668 (admission of evidence relating to another crime of which defendant had been acquitted not barred under double jeopardy or due process clauses).) However, whether *Pendleton II* was correctly decided, we need not address because the parties have not addressed it. We have concluded, however, that the State followed the strictures of *Pendleton II* and that no reversible error occurred.

The appellate court ruled that on retrial the State could not show that Dewey Crockett had died on March 31 and could not show that Crockett's father gave the defendant's name to the police to assist them in identifying his son's killer. Dewey Crockett, Sr.'s testimony in the case before us did not include the fact that he had given the defendant's name to the police and the State did not show expressly that Dewey Crockett had died on March 31. The defense argues that the inference was created in the minds of the jury that Dewey Crockett had died on March 31 from the testimony of his father that he had seen his son with the defendant on a number of occasions before March 31. In our judgment, there is no way the State could have complied with the directions of the appellate court in *Pendleton II* and still have avoided creating the inference that Crockett had been killed in Goodlow's apartment. According to *Pendleton II*, the evidence that Goodlow cried out that someone had been shot in her apartment and the evidence that Crockett was dead at the time of trial in this case was proper. The jury knew that Crockett had gone up to the apartment with the defendant. It appears inescapable to us that the jury would infer that Crockett was killed by someone.

We also find that the defendant has not preserved this claim of error for review.

The prosecutor in opening statement told the jury that Goodlow told Gilchrist and Sibbert that a "man" had been shot in her apartment. No objection was made to that statement.

Crockett's father was asked how many times he had seen the defendant with his son before March 31, 1970, and he said that he had seen them together on a number of occasions. No objection was made to that question and answer. Both Gilchrist and Sibbert testified that Goodlow said that "someone" had been shot in her room. No objection was made to the testimony of Gilchrist and Sibbert.

The defendant contends that the most prejudicial statement concerning Crockett's death was made during the State's closing argument in which the following occurred:

> "The evidence has shown exactly what I said to you in opening statement. Nothing more; nothing else. It shows that on March 31, 1970, this man right here, Maurice Pendleton, he chased a girl and put two holes in her head to keep her from telling anyone else about what happened in her apartment. That's why he killed her. That's why he put her brains all over the street that night, to stop her from telling anyone else besides Priscilla Gilchrist and Bonnie Sibbert as to what happened up in her apartment."

No objection was made to that argument.

This was a strong case for the prosecution. The defendant was identified by two independent witnesses, one of whom had seen him on previous occasions, always with Crockett. Their testimony was partially corroborated by Morrison but more so by Dewey Crockett's father. Consequently, even if we assumed that the prosecution had gone too far with the evidence and in the closing argument, we hold that any error would not rise to the level of plain error. See *People v. Herrett* (1990), 137 Ill. 2d 195, 561 N.E.2d 1.

■ The defendant next maintains that the judge improperly restricted his cross-examination of Valley Morrison. We agree with the State that the defendant waived his assignment of error by failure to include it in his post-trial motion; we further find that no error occurred. The defendant sought to impeach Morrison from his testimony at *Pendleton I*. We agree with the trial judge's description of the questions asked at *Pendleton I* and in this case as "confusing." It was within the judge's discretion to control the examination of witnesses to avoid such confusion. He did not abuse that discretion. See *People v. Kalec* (1961), 22 Ill. 2d 505, 177 N.E.2d 134.

■ The defendant's last contention is that error occurred during examination of Detective Donald Ecklund, who interviewed Sibbert, Gilchrist and Morrison. All three gave descriptions of the shooter and identified the pictures of the defendant. Sibbert testified that she had told Ecklund that she had seen the defendant on previous occasions. The defendant's attorney called Ecklund as his witness and asked Ecklund if Sibbert had told him that she had seen the defendant before the shooting. Ecklund said that she had told him that she had seen the defendant before. The defendant's attorney then sought to establish that Ecklund had not put that information in his police report. The State's objection was sustained. The defendant's argument on this point is as follows:

> "[T]he trial court erred in refusing to allow defense counsel to impeach a police officer concerning his failure to include a statement in his police report. *** The failure to allow this line of questioning prevented the defense from casting a shadow on the government's weakest witness, Bonnie Sibbert."

We agree that no error occurred in the restriction of Ecklund's examination, but not for the reason advanced by the State. The failure of Officer Ecklund to put something in his police report might be considered impeachment of the officer, but it cannot be considered impeachment of Sibbert. There was no showing that Officer Ecklund's testimony was contrary to what he had told the defendant's attorney before he testified or that the defendant's attorney was taken by surprise. In effect, the defendant's attorney was trying to

make Ecklund a strawman and to attack him. The defendant's proffered examination would have improperly detracted from the credibility of Sibbert.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

RAKOWSKI and GIANNIS, JJ., concur.